Harsha, J.,
concurring.
{¶ 37} Once the legislature initially placed the proceeds from the master settlement agreement (“MSA”) between the state and the tobacco-product manufacturers into the state treasury, Section 22, Article II of the Ohio Constitution prohibited the legislature from subsequently creating an irrevocable public trust with those funds. As a result, the unexpended money in the endowment fund was subject to reappropriation by the legislature.
*521 {¶ 38} Section 22, Article II of the Ohio Constitution states: “No money shall be drawn from the treasury, except in pursuance of a specific appropriation, made by law; and no appropriation shall be made for a longer period than two years.”
{¶ 39} Under former R.C. 183.02, 148 Ohio Laws, Part V, 10767, 10777, the legislature directed that “[a]ll payments received by the state pursuant to the tobacco master settlement agreement shall be deposited into the state treasury to the credit of the tobacco master settlement agreement fund, which is hereby created.” The General Assembly provided that once the money was deposited into the MSA fund, the money was to be shifted into eight different funds, including the Tobacco Use Prevention and Cessation Trust Fund, see former R.C. 183.02(A) through (H), 148 Ohio Laws, Part V, at 10778-10789, which was “created in the state treasury,” former R.C. 183.03, 148 Ohio Laws, Part V, at 10782.
{¶ 40} The legislature then appropriated money from this fund into an endowment fund. See former R.C. 183.08(A), 148 Ohio Laws, Part V, at 10785. Under former R.C. 183.08(A), the endowment fund was to “be in the custody of the treasurer of state but shall not be a part of the state treasury.” Based on this language, the majority opinion views the endowment fund as a “custodial fund” removed from the biennial appropriation cycle, i.e., unexpended money in the endowment fund that did not automatically revert to the treasury after two years. However, this interpretation of former R.C. 183.08 overlooks the plain language of Section 22, Article II of the Ohio Constitution.
{¶ 41} In State ex rel. Rothbacher v. Herbert (1964), 176 Ohio St. 167, 27 O.O.2d 48, 198 N.E.2d 463, Katharina Rothbacher owned a savings deposit in a savings and loan company. The company dissolved, and all unclaimed deposits, including Rothbacher’s deposit, were placed in a “regular account,” i.e., an account of funds held in trust by the state treasurer, subject to the order of the superintendent of building and loan associations. Id. at 167. Subsequently, the state auditor, pursuant to statute, had the funds transferred into the General Revenue Fund. Id. Rothbacher then sought a writ of mandamus to compel the state treasurer to return her money. Id. at 168.
{¶ 42} This court denied the writ, holding that Rothbacher’s funds were initially held in the regular account, subject to the order of the superintendent, and required no prior appropriation by the General Assembly. Id. at 169. But once the funds were transferred and became part of the General Revenue Fund, they were no longer subject to the order of the superintendent and “could be expended only as provided by law.” Id. Therefore, the funds could not be withdrawn unless the legislature made an appropriation under Section 22, Article II of the Ohio Constitution. Id. at 170.
{¶ 43} In this case, the MSA funds were initially deposited into the state treasury under former R.C. 183.02, 148 Ohio Laws, Part V, at 10777. Therefore, *522 the legislature could not withdraw them except in accordance with Section 22, Article II of the Ohio Constitution, i.e., in pursuit of a specific appropriation, not to exceed two years. After the MSA funds had been deposited into the general fund, the legislature could not circumvent the constitutional limitation by appropriating them into a custodial account. State ex rel. Rothbacher, 176 Ohio St. at 169-170, 27 O.O.2d 48, 198 N.E.2d 463. In other words, the General Assembly could not create a custodial account to indirectly do what Section 22, Article II of the Ohio Constitution prohibits it from doing directly. See Taylor v. Ross Cty. Commrs. (1872), 23 Ohio St. 22, 34.
Zeiger, Tigges & Little, L.L.P., John W. Zeiger, and Stuart G. Parsed, for appellants Robert G. Miller Jr., David W. Weinmann, and American Legacy Foundation.
Richard Cordray, Attorney General, Alexandra T. Schimmer, Chief Deputy Solicitor General, and Richard N. Coglianese, Michael J. Schuler, Damian Sikora, Aaron D. Epstein, and Katherine J. Bockbrader, Assistant Attorneys General, for *523 appellees the state of Ohio, Attorney General Richard Cordray, Treasurer Kevin L. Boyce, and the Ohio Department of Health and its director, Alvin D. Jackson.
*522 {¶ 44} Therefore, despite the fact that former R.C. 183.08(A) directed that the endowment fund was to “be in the custody of the treasurer of state but shall not be a part of the state treasury,” any unexpended funds the legislature appropriated into the endowment fund should have reverted to the treasury after two years. And in light of Section 22, Article II of the Constitution, once funds are deposited into the state treasury, they cannot be used to create an irrevocable public trust.
{¶ 45} If the General Assembly intended to free the settlement funds from the dictates of Section 22, Article II of the Ohio Constitution, it had to place the MSA funds directly into a custodial account under R.C. 113.05(B), or the treasurer of state’s contingent fund, created in R.C. 113.10, instead of first depositing the funds into the state treasury. Clearly the General Assembly knew how to create a custodial account — it used specific language to do so in former R.C. 183.08. See, e.g., R.C. 148.02, 149.305, and 3334.11. Just as clearly, the language in former R.C. 183.02 merely directing that all payments received under the MSA be “deposited into the state treasury to the credit of’ a specific fund does not create a custodial account.
{¶ 46} Because the funds appropriated to the endowment fund were not placed in an irrevocable public trust, the General Assembly was free to reappropriate the money to any fund it desired. Far from being unconstitutional, 2008 Am.Sub.S.B. No. 192 and 2008 Sub.H.B. No. 544 are consistent with the constitutional mandate of Section 22, Article II of the Constitution.
{¶ 47} I agree with the analysis of the majority opinion on the other constitutional issues raised by this appeal.
*523 Mac Murray, Petersen & Shuster and Helen Mac Murray, urging reversal for amici curiae former Attorney General Betty D. Montgomery, former Senate President Richard H. Finan, and former Director of Ohio Department of Health J. Nick Baird, M.D.
James E. Arnold & Associates, L.P.A., James E. Arnold, and R. Gregory Smith, urging reversal for amici curiae Academy of Medicine of Cleveland and Northern Ohio, American Heart Association Great Rivers Affiliate, American Lung Association, American Cancer Society Cancer Action Network, Campaign for Tobacco-Free Kids, Ohio State Medical Association, American Heart Association, American Lung Association of the Midland States, American Cancer Society Ohio Division, Association of Ohio Health Commissioners, Ohio Public Health Association, and American Medical Association.
Law Offices of Russell A. Kelm, Russell A. Kelm, and Joanne W. Detrick, urging reversal for amicus curiae Citizens’ Commission to Protect the Truth.
Bricker & Eckler, L.L.P., Anne Marie Sferra, and Daniel C. Gibson, urging affirmance for amici curiae Ohio Dental Association, Ohio Optometric Association, Ohio State Chiropractic Association, and Ohio Association of Community Health Centers.
Richard Cordray, Attorney General, and Jeannine R. Lesperance, Assistant Attorney General, urging affirmance for amici curiae President of the Ohio Senate Bill Harris and Speaker of the Ohio House of Representatives Armond Budish.
Squire, Sanders & Dempsey, L.L.P., Pierre H. Bergeron, and Thomas D. Amrine, urging affirmance for amicus curiae National Conference of State Legislatures.
Peck, Shaffer & Williams, L.L.P., Thomas A. Luebbers, and Erin A. Sutton, urging affirmance for amici curiae County Commissioners Association of Ohio, Ohio Job and Family Service Directors Association, Public Children Services Association of Ohio, and Ohio Child Support Enforcement Agency Directors Association.
Weston Hurd, L.L.P., and Daniel A. Richards, urging affirmance for amicus curiae Voices of Ohio Children.